SWAN (OMALY v.). See Case No. 10,508.

SWAN (PICQUET v.). See Cases Nos. 11,132 and 11,133.

---

## Case No. 13,670.

### SWAN v. WRIGHT.

[3 Woods, 587.] [1]

Circuit Court, S. D. Alabama. June Term, 1879.

PRACTICE IN EQUITY—BILL OF REVIEW—SECURITY FOR COSTS AND DAMAGES—MOTION TO DISMISS.

1. On the filing of a bill of review, the equity practice requires the complainant to give security or deposit a sum of money for satisfying the costs and the damages for delay, if the case is found against him.

2. But if such a bill is filed without security or deposit, and the defendant allows the case to proceed and costs to accumulate without objection, he cannot have the bill instantly dismissed on motion.

3. In such case the complainant will, on motion, be ordered to give the security or make the deposit within a day named, and, in default thereof, his bill will be dismissed.

4. To entitle a party to bring a bill of review, it is necessary that he should have obeyed and performed the decree.

5. When the complainant, in a bill of review, had leave of the court to file his bill, and had performed all things required by the decree up to the time of filing his bill of review, but had failed to perform matters required by the decree to be performed after the date of filing the bill

of review, he was ordered by the court, on motion of the defendant, to perform, by a certain day, those matters as to which he was in default, on penalty of having his bill of review dismissed.

6. It is no sufficient reply to a motion to dismiss a bill of review on the ground that the decree sought to be reversed has not been performed, to say that there is ample security for the performance of the decree. The defendant in the bill of review is entitled to the absolute performance of the decree.

In equity. Bill of review.

The Alabama & Chattanooga Railroad Company, by authority of a decree of this court, made on January 23, 1874, was, on December 4, 1876, by the masters appointed for that purpose, sold to John T. Wilder and D. C. McMillen, who, on March 30, 1877, transferred their bid and purchase to the complainant, John Swan, and on June 30, 1877, a decree of this court was made confirming said sale, and substituting the complainant as purchaser in the stead of said Wilder and McMillen. The sale was made for the price of $600,000, and the property was sold subject to the lien of certain receiver's certificates which had been issued by authority of the court, and the interest accrued and to accrue thereon, which was evidenced by coupons attached. The receivers were authorized to issue twelve hundred certificates of $1,000 each, due in ten years after date, with eight per cent interest, payable semi-annually. The certificates all bore date September 5, 1872, and are to fall due September 1, 1882. The executors of one John S. Wright claimed to be the bona fide owners and holders of one hundred and eleven of said receivers' certificates for one thousand dollars each, with a number of past due coupons, and upon a reference to Lyman Gibbons, Esq., master, he reported on April 7, 1877, that said one hundred and eleven certificates so held by the executors of said John S. Wright, with the interest coupons thereon, were just and valid claims in favor of said executors, and on June 14, 1877, said report was confirmed by the court, and said certificates and coupons allowed in favor of said executors.

The decree of the court of June 19, 1877, confirming the sale of said railroad to Swan, after reciting the payment by him of the sum of $80,000 part of his bid of $600,000, ordered and directed him to pay $30,000 of the residue within thirty days from the date of the decree of confirmation, $190,000, with interest thereon, on or before the first day of the then next term of the court, to wit, the fourth Monday of December, 1877, and the residue of his bid, to wit, $300,000, with interest, on or before the first Monday of June, 1878. The payment of the $30,000 installment was made according to the terms of the decree, but on December 17, 1877, on the application of Swan, the time for the payment of the installment of $190,000 was extended from the first to the last day of the December term, 1877. During said term,

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

to wit. on January 19. 1878, an order was made by the court suspending all further payments of the unpaid purchase money of said railroad until the fourth Monday of June then next following. By a subsequent order, dated June 20. 1878, the court extended the time for the payment of the residue of said bid of $600,000 to July 11, and on that day said residue was paid into the registry of the court.

On February 13, 1878. Swan applied to this court for leave to file a bill of review to reverse and annul so much of the decree of June 14, 1877, as confirmed the report of the master establishing the said certificates and allowing them to the executors of John S. Wright. The bill of review alleged that the complainant had, since said decree, discovered evidence which showed the invalidity of said certificates allowed to John S. Wright's executors, and it also charged. upon information and belief that said executors fraudulently concealed and withheld said evidence from the master and the court, and thereby procured the decree of the court establishing said certificates. The bill of review alleged that the complainant therein "had made no default, but had fully complied with the order and decrees of the court in respect to his said purchase, and that, by an existing order of the court, the payment of the said claim of said John S. Wright, as well as of other claims. was postponed to a future period, and remained so postponed." The court granted leave to file said bill of review, and it was accordingly filed on February 13, 1878.

On June 3, 1878, the defendants to the bill of review filed their answer, in which the objection was taken to the bill that the complainant had not complied with the terms of the decree which he sought by his bill to review. After the case was put at issue by replication, examiners were appointed by the court, and a large mass of testimony was taken. Neither before nor since July 11, 1878, the date on which the last indulgence for paying the purchase money of the road expired, had any interest been paid upon the certificates held by the executors of Wright. When the bill of review was filed on February 13, 1878, nearly $40.000 of interest was due on the certificates held by the defendants, and more than $10.000 interest had since accrued, and no part of these sums had been paid. The complainant had not given any security for the costs nor had he made any deposit of money to be applied to the costs, as required by the rules of the court.

On June 16, 1879, the defendants filed a motion to dismiss the bill on two grounds: (1) Because no security for costs had been given or deposit of money made, as required by the rules of the court; and, (2) because the complainant had not performed the decree of the court which his bill of review sought to reverse.

Peter Hamilton, T. A. Hamilton, Moorfield Storey, and E. L. Grandin, for the motion.

S. F. Rice and David Clopton, contra.

WOODS, Circuit Judge. This is the first time that the defendants have brought to the notice of the court the fact that no security for costs had been given by the complainant. The defendants have answered, the complainant has replied, and an immense mass of testimony has been taken at great cost and expense. The English rule on this subject of security for the costs is without question substantially the rule by which this court is to be governed. The fifth of Lord Bacon's ordinances provided that no bill of review should be put in except the party that preferred it entered into recognizances, with sureties, for satisfying costs and damages for the delay, if it was found against him. This provision being insufficient, by an order of March 12, 1700, it was ordered, for the future, that no bill of review should be allowed or admitted, except the party who preferred it first deposited the sum of £50 with the registrar of the court as a pledge to answer such costs and damages as the court should award to the adverse party, in case the court should think fit to dismiss the bill of review. 3 Daniell, Ch. Prac. 1730. But conceding this to be the rule of this court, yet if a bill of review is filed without security or deposit of money, and the defendant allows costs to accumulate without objection, he cannot have the bill dismissed on that account. The conduct of defendant is a waiver of his right to have the bill dismissed. The most he can claim is that complainant shall be ordered to give security within a given day, and in default thereof that then his bill be dismissed. Lavange v. Burke, 50 Ala. 61. The first ground of the motion to dismiss is, therefore, not well taken.

The second ground for the motion to dismiss is, that the complainant has not performed the decree. To entitle a party to bring a bill of review, it is necessary that he should have obeyed and performed the decree, as if it be for land, that the possession be yielded, if it be for money, that the money be paid. 3 Daniell, Ch. Prac. 1730. And by the third and fourth of Lord Bacon's ordinances, no bill of review shall be admitted, or any other new bill, to change matter decreed, except the decree be first obeyed and performed. Mitf. Eq. Pl. (6th Am. Ed.) 106, note. And Lord Redesdale says: "It is a rule of the court that the bringing of a bill of review shall not prevent the execution of the decree impeached, and if money is directed to be paid before the bill of review is filed, it ought regularly to be paid before the bill of review is filed, though it afterwards be ordered to be refunded." Mitf. Eq. Pl. (6th Am. Ed.) 106. In Wiser v. Blachly, 2 Johns. Ch. 488, Chancellor Kent says: "The party asking for a bill of review must gen-

erally show that he has performed the decree, especially if it be a decree for the payment of money, and he must likewise pay the costs, and nothing will excuse the party from this duty but evidence of his inability to perform it. This appears to be a settled rule laid down in the ancient and modern books." In Partridge v. Usborne, 5 Eng. Ch. 195, the lord chancellor said: "Whatever the party is bound to do whenever the bill of review is put on file, that he must do before the bill is filed. But as the permission to file a bill of review is always given upon the assumption and implied understanding and engagement that the original decree shall be performed, I am also of opinion that if, after the bill is filed, the period arrives when money ought to be paid, it is incumbent on the party to pay that money. Otherwise an application to dismiss the bill may be made on that ground. he having filed the bill upon an engagement and understanding which he has failed to comply with." In the case of Williams v. Mellish, 1 Vern. 117, a motion was made on behalf of the plaintiff, that proceedings might be stayed on a decree until the plaintiff was heard on a bill of review. But the lord keeper said: "In this case the decree shall be performed to a tittle before any bill of review be allowed, unless the plaintiff Williams will swear himself not able to perform the decree, and will surrender himself to the fleet, to lie in prison till the matter be determined on the bill of review." See, also, on this subject, the following cases: Anon., 12 Mod. 343; Bishop of Durham v. Liddell, 2 Brown, Parl. Cas. 63; Wiser v. Blachly, 2 Johns. Ch. 488; 2 Smith, Ch. Prac. (2d Am. Ed.) 53.

These authorities apply not only to bills of review, strictly so-called, but to all bills in the nature of bills of review, which seek to disturb decrees of the court already rendered: Bacon's Ordinances, 3 and 4, supra. Has the complainant in the bill of review performed the decree? This question can only be answered by inquiring what the decree required him to do. The property which the complainant purchased was sold to him for a fixed sum, and subject to the lien of such receiver's certificates as should be allowed by the court, and other claims superior to the first mortgage bonds. The fixed sum, namely, $600,000, and the liens superior to the first mortgage bonds, including receiver's certificates, principal and interest, constituted the purchase money. The decree of the court contemplated the payment of the interest as it fell due on the receiver's certificates, as much as it did the payment of the bid of $600,000. If the purchaser was not bound to pay the interest on the receiver's certificates as it fell due, then the question occurs, when was he bound to pay the interest? His obligation, under the decree of the court, was duly to pay his bid, $600,000, in the installments fixed by the court, and to pay such interest coupons as were due and not extinguished by the $600,000, and to pay the coupons not due as they fell due. The complainant himself has put this construction upon the decrees of the court, and his obligations thereunder. In the fourteenth paragraph of his bill he states that he has made no default in complying with the order or decrees of the said circuit court, in respect to his said purchase, * * * and that by an existing order of said court, made during the present term, * * * the payment of the said claims of John S. Wright, as well as of other claims, was postponed to a future period. The order referred to here was that made January 29, 1878, "that any and all payments of the unpaid purchase money arising out of said purchase of petitioner Swan, be and the same is hereby suspended and postponed until the fourth Monday of the next regular term of this court."

It is, therefore, evident that the complainant himself considered the certificates of Wright a part of the purchase price of the railroad, and that it was his duty, under the decrees of the court, to pay the interest thereon as it accrued, for he claimed that the order of the court just quoted was effectual to prolong the time for the payment of the claim of Wright. When, therefore, Swan applied to the court, on January 22, 1878, that all further payment of the unpaid part of the purchase money, under said purchase of said Swan, might be stayed and postponed till the further order of the court, he asked to have the payment of the past due coupons on Wright's certificates postponed. If the claim of Wright was not then payable by the terms of the decree of the court, there was no propriety in asking the court to postpone its payment. The undoubted purpose of the order of January 29, 1878, was to postpone the payment of all sums which, by the decree of the court, were then due from Swan on his purchase. His petition for postponement represented that, by a bill filed in the United States circuit court for the Northern district of Alabama, a mortgage lien superior to the mortgage lien by virtue of which the sale had been made, was set up against said railroad which he had purchased. The purpose of the postponement of payments prayed for in his petition was, that he might ultimately be relieved from his purchase, in case the prior lien set up in said bill should prevail. It was, therefore, just as important that he should be relieved from the present payment of past due coupons on the receiver's certificates, which at that time amounted to about $400,000, as from the unpaid balance of his bid, which was only $300,000. It may, therefore, be assumed that the order of January 29, 1878, and the subsequent orders on the same subject, heretofore mentioned, postponed until July 11, 1878, the payment of all sums due and payable by Swan on his purchase, whether due on his bid or due on coupons attached to the receiver's certificates. That was what Swan asked for, and that was what the court granted him. When, therefore, on February 13,

1878, in his petition for leave to file his bill of review, he stated that he had performed up to that time all things required of him by the orders and decrees of the court, he stated, so far as appears, what was the truth, and upon that statement the court allowed the bill of review to be filed.

Therefore, when the defendants, in their answer filed June 3, 1878, set up, as a defense to the bill of review, that the complainant therein had not obeyed and performed the decree of the court, their allegation was not sustained by the facts of the case. But on July 11, 1878, the indulgence granted by the court to Swan expired. The entire residue of his bid was then due and he paid it. But it was just as incumbent on Swan to pay on that day the past due interest on the receiver's certificates, as the residue of his bid. The orders and decrees of the court required it. The grace which he had asked from the court for the payment of this interest, including the coupons belonging to Wright's certificates, had expired. He had no warrant for another day's delay. Yet, up to this time, although there is $50,000 of interest due on the certificates held by the defendants, it is not pretended that he has paid them one cent. His failure to pay is a contemptuous disregard of the orders and decrees of this court. In the mean time, the bill setting up a prior lien on the railroad property has been dismissed; he is in the undisturbed possession and enjoyment of the railroad, and he still prosecutes his bill of review, without any pretense of compliance with the decree of the court which he seeks to review. It is no excuse that the railroad property on which his certificates are a lien is ample security for the performance of the decree. These defendants are entitled to something more than security. They are entitled to the absolute and unconditional performance of the decree. After, as in this case, the court has deliberately settled the rights of the parties by its decree, the operation of the decree cannot be suspended by the filing of a bill of review, either with or without leave.

The complainant was allowed to file his bill of review on the assumption that he would perform the decree, unless relieved from performance by the orders of the court. If, after the bill of review is filed, the period arrives when money ought to be paid, it is incumbent on the party to pay that money, otherwise an application to dismiss the bill may be made, he having filed the bill upon an engagement and understanding which he has failed to comply with. Partridge v. Usborne, supra. This is the first time since the complainant has been in default that the fact has been brought to the attention of the court. The defendants are now entitled to require the complainant to give security for costs, and to perform so much of the decree as it was his duty to perform up to this time. But he is not, under the circumstances, entitled to a peremptory order of dismissal. The complainant should be allowed a reasonable time to discharge the duty required of him.

The final hearing of this case having been heretofore fixed for October next, the order of the court will be that, unless by that time the complainant gives security for the costs, and pays to the defendants all coupons which at that date shall be past due on the certificates held by them, his bill of review shall be dismissed out of this court.

[On final hearing the bill was dismissed, and on appeal to the supreme court that decree was affirmed. 110 U. S. 590, 4 Sup. Ct. 235.]